## THE FRED. SCHLESINGER.

### (District Court, N. D. New York. January 25, 1896.)

1. COLLISION—YACHT SUNK IN CHANNEL—DANGER SIGNALS.
   The use of pieces of wood and two partly submerged buckets, together with a white pocket handkerchief attached to the end of a bamboo pole, *held* insufficient as danger signals to indicate the presence of a yacht sunk under 18 feet of water in a frequented channel. To charge other vessels with negligence in running upon the yacht, it was the duty of those in charge of her to station a staunch sea boat by the wreck until it could be removed.

2. SAME—PRESUMPTIONS.
   The fact that portions of a yacht sunk in a channel came to the surface shortly after a certain steamer passed, does not raise so strong a presumption that she ran upon the wreck as to overcome the testimony of those upon the steamer, and a tug towing her, that they passed from 70 to 100 feet to one side of the flag marking the wreck.

On the evening of August 20, 1895, the steam yacht Rung Brothers sank in the outer harbor of Buffalo, in or near what is known as the Reading Channel. She was about 50 feet in length and 10 feet beam, with an open cabin or awning extending over nearly her entire length. The Schlesinger is a propeller 335 feet long, 44 feet

beam, and, on the day in question, her draft was about 16½ feet. On the morning of August 21st, at about 11 o'clock, the wreck was discovered and its position indicated by anchoring thereto parts of two oars, two buckets partly submerged, and a bamboo pole from which floated a small white flag such as is used by fishermen to indicate the location of their nets. The Schlesinger left her dock between 12 and 1 o'clock in tow of the tug Gee bound up the lake. After passing the north end of the Erie Basin wall she took the usual course for the red light at the end of the breakwater. The libelants contend that the Schlesinger ran into the wreck and caused the damage subsequently discovered. The claimant insists that the Schlesinger and tug passed from 75 to 100 feet to the southward of the wreck. During the afternoon and evening of August 21st the wrecking tug Fern was at work on the wreck, preparing to raise or remove her, and at 9 o'clock in the evening the large tug Davis, in connection with the Fern, pulled the wreck along the bottom of the lake several hundred feet to a point behind the breakwater, where she rested until the morning of August 22d, when she was raised by means of chains, fastened around her at each end, and towed to a dry dock. On the evening that the yacht went down there was considerable sea running. Within five minutes after the disaster the tug Maytham, drawing 10 feet and 3 inches, came to the rescue of the passengers and cruised in the vicinity for some time. It is not impossible that she may have collided with the wreck. It is also in evidence that dragging the wreck along the bottom of the lake and raising her by steam power in the manner referred to was sufficient to produce the damage complained of.

Urban C. Bell, for libelants.

Harvey L. Brown, for claimant.

COXE, District Judge. It must be admitted that a vessel lying under 18 feet of water at the bottom of a frequented channel is not in a particularly favorable position to maintain a collision suit. Such a wreck directly in the track of passing vessels is a most dangerous menace to navigation. Regard for her own safety, as well as for the safety of others, should compel those responsible for her to make her presence known by plain and unmistakable signals. The only means taken to mark the wreck of the Rung Brothers was a small white flag about the size of a pocket handkerchief at the end of a bamboo pole. It was a signal such as fishermen use to mark the location of their nets. There were also some pieces of wood and two buckets partly submerged anchored to the wreck and floating in its immediate vicinity. The flag was, however, the only signal that could be seen for any considerable distance. This was wholly inadequate as a warning signal. It did not necessarily indicate danger or announce the presence of a wreck. If it had any significance at all it meant that a fisherman's net was spread at that point. A red flag is a signal of danger, a white flag of safety. It was clearly the duty of the owners of the Rung Brothers, if they wished to avoid the charge of negligence, to have a tug or some

other staunch sea boat stand by the wreck until she could be properly buoyed or moved out of the channel. No authority has been cited or found by the court holding that such signals as the Rung Brothers displayed are sufficient to mark a wreck. The burden is strongly upon the libelants to show that they were free from negligence in this regard. They have not borne the burden.

But assuming that passing vessels were chargeable with notice of the location of the wreck, the burden is still on the libelants to satisfy the court, first, that the Schlesinger struck the wreck, and, second, that the blow caused the injury which was discovered on the following day. The libelants' case, upon both propositions, is based largely upon inference and conjecture. Those on the tug and on the steamer were unquestionably in the best position to know the course pursued, and they unite in saying that they saw the white flag and passed from 70 to 100 feet to the left of it. The libelants' witnesses were none of them in a position where they could discern with necessary precision the course of the propeller. Certainly they could not tell the course as accurately as those on the propeller herself. Indeed, the main argument of which collision is predicated is founded on the fact that portions of the wreck came to the surface soon after the Schlesinger passed. It is contended that the presumption is strong that this resulted from a blow given by the Schlesinger. Undoubtedly this would be so in the absence of testimony to the contrary, but it is insufficient to overcome the positive and preponderating testimony on the part of the claimant that the Schlesinger could not have struck the wreck. Indeed, it seems evident that if the propeller had passed between the buoys, as the libelants contend, the yacht, instead of being twisted, would have been reduced to kindling wood. The propeller was dragging on the bottom all the way out and was proceeding at the rate of three or four miles an hour. Had she struck the long, narrow, and lightly built yacht a square or even a glancing blow, it is certain that instead of being injured the yacht would have been destroyed. Again, assuming the fact of collision, there is nothing but the most inconclusive inference to show the character and extent of the blow. The Rung Brothers was raised the second day after she foundered. During the interval she had been dragged for several hundred feet along the bottom of the lake; she had been hoisted by steam power with chains around her bow and stern; three tugs had been working directly over her, one of them in a choppy sea, and several other vessels beside the Schlesinger must have passed through the Reading Channel. The injury to the wreck might have resulted from these causes or any of them. Upon what theory would the court be justified in attributing it wholly to the Schlesinger?

The libel must be dismissed, first, for the reason that if there were a collision it was due to the negligence of the libelants in failing to indicate by sufficient signals the location of the wreck. Second, the burden is upon the libelants to establish the fact of collision by a preponderance of testimony. Not only have they failed in this, but the weight of evidence is to the effect that the Schlesinger passed at

least 70 feet to the southward of the wreck. And, third, assuming the Schlesinger struck the wreck there is nothing but inference to show that she caused the damage described. The libel is dismissed.